**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| David Carter and Joseph Gilliard, on behalf of themselves and others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) C.A. No.: 2:09-2721-PMD |
| v. | )<br>) |
| MasTec Services Company, Inc. d/b/a MasTec Advanced Technologies, MasTec North America, Inc. d/b/a MasTec Advanced Technologies, MasTec North America AC, LLC, d/b/a MasTec Advanced Technologies, and DirecTV, Inc., | )  **ORDER**<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

This matter is before the court on Defendants MasTec Services Company, Inc., MasTec North America, Inc., MasTec North America AC, LLC, (collectively "MasTec"), and DirecTV, Inc.'s motion to stay this proceeding and compel Plaintiffs David Carter and Joseph Gilliard ("Plaintiffs") to arbitrate their claims on an individual basis. For the reasons set forth herein, the court grants Defendants' motion.

## BACKGROUND

MasTec is in the business of installing satellite dishes, satellite receivers, and related equipment for DirecTV, and Plaintiffs began working for MasTec in October of 2007. According to Plaintiffs, MasTec regularly required "installation personnel" to work more than 40 hours per week, but refused to compensate them for the overtime work completed. When Plaintiffs informed MasTec of its failure to completely compensate them for their overtime work, it allegedly threatened to terminate their employment with the company, and as a result,

Plaintiffs eventually ended their employment relationship with MasTec and filed this class action lawsuit to seek relief. As against all Defendants, Plaintiffs allege five causes of action: (1) violation of the Fair Labor Standards Act; (2) violation of the South Carolina Payment of Wages Act; (3) conversion; (4) unjust enrichment; and (5) wrongful discharge in violation of public policy. All five causes of action are based on Defendants' alleged refusal to compensate Plaintiffs for overtime work performed.

In response to Plaintiffs' suit, Defendants contend that both Plaintiffs agreed to submit the claims asserted in their complaint to arbitration; therefore, they ask the court to stay the current action pending the outcome of arbitration. To support its motion, Defendants provided a portion of each Plaintiffs' signed employee handbook, which contains the following provision:

### VII. DISPUTE RESOLUTION POLICY

This Dispute Resolution Policy is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. This Policy applies to any dispute arising out of or related to Employee's employment with the Company or termination of employment. **Except as it otherwise provides, this Policy requires all such disputes that have not otherwise been resolved to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial.** Such disputes include, without limitation, disputes arising out of or relating to interpretation or application of this Policy, but not as to the enforceability or validity of the Policy or any portion of the Policy. **The Policy also applies, without limitation, to disputes regarding** the employment relationship, trade secrets, unfair competition, **compensation**, breaks and rest periods, termination, or harassment **and claims arising under the . . . Fair Labor Standards Act, . . . and all other state statutory and common law claims** (excluding workers compensation, state disability insurance and unemployment insurance claims).
. . . .
An Employee may submit a form stating that the Employee wishes to opt out and not be subject to this Policy. The Employee must submit a signed and dated statement on a "Dispute Resolution Policy Opt Out" form ("Form") that can be obtained from the Company's Legal Department, 800 Douglas Road, 11th Floor, Coral Gables, Florida 33134, by calling 305-406-1875. In order to be effective, the signed and dated Form must be returned to the Legal Department within 30 days of the Employee's receipt of this Policy. An Employee choosing to opt out will not be subject to any adverse employment action as a consequence of that decision.

(Def. Mot. in Supp. Ex. A (emphasis added).) According to Defendants, each Plaintiff agreed to this provision by signing an acknowledgement, which stated that the employee received a copy of the handbook and that the handbook contained a dispute resolution policy which the employee could opt out of. Defendants have provided the signed acknowledgment for each Plaintiff, and the acknowledgements state, in relevant part:

### VIII. EMPLOYEE ACKNOWLEDGEMENT

> Each employee receiving this Handbook is required as a condition of his or her employment to acknowledge receipt of the Handbook by signing and dating this form where indicated and by returning the form to the Human Resources Contact.
>
> I acknowledge that on the date recorded below I received the MasTec Employee Handbook ("Handbook"). I acknowledge that the Handbook describes the terms and conditions of my employment with MasTec and that I will review the Handbook immediately.
> . . . .
> I further acknowledge that the Handbook contains a Dispute Resolution Policy on pages 40–41. The Dispute Resolution Policy provides for final and binding arbitration of designated employment-related disputes. I will review the Dispute Resolution Policy immediately, and I understand I may discuss it with my private legal counsel should I so desire. I acknowledge that I have **thirty (30) days** from the date of my receipt of the Handbook to decide whether I wish to accept the Dispute Resolution Policy or to opt out of being bound by that Policy. If I choose to opt out, I understand that I must return a signed and dated form to that effect to the Company's Legal Department within the 30-day period, as provided in the Dispute Resolution Policy. If I do not return that form within the specified period of time, the Dispute Resolution Policy will apply to both MasTec and me.

(*Id.* Ex. B (emphasis in original).) Based on these provisions, Defendants believe Plaintiffs' claims fall within the scope of the dispute resolution policy and ask the court to enforce the policy by requiring Plaintiffs to proceed with their suit in arbitration on an individual basis.

## ANALYSIS

Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "to replace judicial indisposition to arbitration with a national policy favoring it and placing arbitration agreements on equal footing with all other contracts." *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396, 1402 (2008) (internal quotations and alterations omitted). Section 2 of the Act declares that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," 9 U. S. C. § 2, and § 4 allows a party to such an arbitration agreement to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." Pursuant to § 3, the FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration, and "[t]his stay-of-litigation provision is mandatory." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002). "A district court therefore has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." *Id.* (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir. 2001)).

In the Fourth Circuit, arbitration is appropriate under the FAA if a litigant can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 20005) (internal quotation omitted). In this matter,

Plaintiff contests the second element, denying the existence of a binding contract to arbitrate their dispute. Whether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

First, Plaintiffs argue the employee acknowledgement failed to create a binding arbitration agreement because Defendants' managers, supervisors, and human resources personnel failed to explain the dispute resolution policy to them. As such, Plaintiffs contend they never knowingly assented to that provision of the handbook. Defendants contend that Plaintiffs had ample time to review the dispute resolution policy, as each employee had 30 days to decide if he or she wanted to opt out of it, and that the policy encourages employees to discuss the matter with private legal counsel. The court agrees with Defendants. In *Towles v. United Healthcare Corporation*, the South Carolina Court of Appeals rejected a similar argument made by an employee who also had signed an acknowledgement of an employee handbook that required the arbitration of employment-related disputes. 338 S.C. 29, 37–38, 524 S.E.2d 839, 844 (Ct. App. 1999). The court found that the employee could not legitimately claim that his employer failed to provide actual notice of the arbitration provision because "the law does not impose a duty to explain a document's contents to an individual when the individual can learn the contents from simply reading the document." *Id.* at 39, 524 S.E.2d at 845. As the court found in *Towles*, this court finds that Plaintiffs cannot legitimately claim they did not knowingly assent to the dispute resolution policy when they failed to opt out of it within the 30-day period provided to take such action. Also, with respect to Plaintiffs contention that the dispute resolution policy violates public policy because they were forced to sign the acknowledgment of receipt of the handbook to remain employed with Defendants, the court disagrees. In fact, with

5

respect to the arbitration provision, the opposite is true, as Defendants provided Plaintiffs with the choice to opt out of it. Moreover, as stated in the policy, an employee's decision to opt out of the arbitration provision would "not be subject to any adverse employment action as a consequence of that decision." (Def. Mot. Ex. A.) Therefore, Plaintiffs' consent to the dispute resolution policy was not a condition of their employment in violation of S.C. Code Ann. § 15-48-10(b)(2).

Next, Plaintiffs argue the agreement to arbitrate is illusory because Defendants can unilaterally modify the policy. Defendants contend that Plaintiffs have failed to quote any language from the dispute resolution policy that enables them to modify that agreement, and the court, after reviewing the policy itself, did not find any language that supports Plaintiffs' position. The only language cited to by Plaintiffs that permits Defendants to modify the terms of the employment relationship concerns Defendants ability to modify each Plaintiffs' status as at-will employees, which has nothing to do with the matters before this court. Therefore, the court finds no merit in Plaintiffs' argument that its agreement to arbitrate is illusory.

Lastly, Plaintiffs seek to avoid arbitration by arguing that Defendants were never a party to the dispute resolution policy because they never signed the policy in question, and as a result, they cannot enforce it. MasTec argues the fact that one of its agents did not sign the handbook receipt does not prevent it from enforcing the arbitration provision, and the court agrees. Under South Carolina law, an arbitration provision located within an employment agreement signed by an employee but not the employer can be enforceable and binding on both parties. *See Poteat v. Rich Prods. Corp.*, 91 F. App'x 832, 834 (4th Cir. 2004) (finding an agreement to arbitrate was enforceable under South Carolina law despite the fact that the employer never signed the agreement that contained the arbitration provision); *Jaffe v. Gibbons*, 290 S.C. 468, 473, 351

S.E.2d 343, 346 (Ct. App. 1986) ("[I]t has long been a paradigm of South Carolina law that when a contract signed by one party only is accepted by the other party, it becomes binding upon both just as if it were signed by both.").

DirecTV argues that Plaintiffs' must also pursue their claims against it in arbitration, as the dispute resolution policy covers "any dispute arising out of or related to [their] employment with the Company or termination of employment." (Defs. Mot. in Supp. Ex. A.) Moreover, DirecTV contends that, although it did not sign the acknowledgment to the employee handbook, Plaintiffs' claims against it are based on the same facts and are inherently inseparable from the claims they assert against MasTec; therefore, Plaintiffs should be required to resolve all of their claims in arbitration. Courts have allowed a nonsignatory to an arbitration agreement to force one of the signatories to that agreement to arbitrate claims against it pursuant to a so-called "intertwined claims" test. *See, e.g.*, *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528–30 (5th Cir. 2000); *Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 841 n. 9 (7th Cir.1981). Under the intertwined claims test, "the circuits have been willing to estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Thomson,* 64 F.3d at 779; *see also Choctaw Generation Ltd. P'ship v. American Home Assur. Co.*, 271 F.3d 403, 406 (2d Cir. 2001). The rationale for preventing signatories from avoiding arbitration with nonsignatories is based on principles of equitable estoppel. This circuit has explicitly applied the intertwined claims test as articulated by the Eleventh Circuit:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the

7

nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. **Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.** Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Brantley v. Republic Mortgage Ins. Co.*, 424 F.3d 392, 395–96 (4th Cir. 2005) (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (citations omitted) (emphasis added)). In this case, Plaintiffs allege that DirecTV and MasTec committed the same misconduct by failing to compensate them for overtime work performed; therefore, Plaintiffs allegations against both Defendants are substantially interdependent of each other. Because Plaintiffs and Defendants formed a valid, binding arbitration agreement, which encompasses Plaintiffs' claims, the court finds the FAA requires arbitration, and it stays the proceedings in this matter, pending the outcome of arbitration.

## CONCLUSION

For the foregoing reasons, the court **GRANTS** Defendants' motion to compel arbitration and stay proceedings.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**February 5, 2010**
**Charleston, SC**

8